UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSE F.,

                    Plaintiff,

          v.

MARTIN O'MALLEY,[1] Commissioner of
  Social Security,

                    Defendant.
_____

**DECISION
and
ORDER**

**22-CV-325F**
(**consent**)

APPEARANCES:       HILLER COMERFORD INJURY & DISABILITY LAW PLLC
                            Attorneys for Plaintiff
                            KENNETH R. HILLER,
                            IDA M. COMERFORD, and
                            JEANNE ELIZABETH MURRAY, of Counsel
                            6000 North Bailey Avenue
                            Suite 1A
                            Amherst, New York  14226

                            TRINI E. ROSS
                            UNITED STATES ATTORNEY
                            Attorney for Defendant
                            Federal Centre
                            138 Delaware Avenue
                            Buffalo, New York  14202
                                  and
                            CHRISTOPHER NELSON HURD
                            Special Assistant United States Attorneys, of Counsel
                            Social Security Administration
                            Office of General Counsel
                            6401 Security Boulevard
                            Baltimore, Maryland  21235

## <u>JURISDICTION</u>

On April 11, 2024, the parties to this action consented pursuant to 28 U.S.C.

---

[1] Martin O'Malley became the Acting Commissioner of the Social Security Administration on December 20, 2023, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

§ 636(c) to proceed before the undersigned in accordance with this court's June 29, 2018 Standing Order.  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on September 29, 2022 (Dkt. 10), and by Defendant on November 28, 2022 (Dkt. 11).

## BACKGROUND

Plaintiff Jose F. ("Plaintiff"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 416.1383(c)(3) seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application ("application") filed with the Social Security Administration ("SSA") on June 25, 2019, for Supplemental Security Income ("SSI") under Title XVI of the Act ("disability benefits"). Plaintiff alleges he became disabled on July 21, 2016, based on anxiety, depression, mood swings, possible ADHD (attention-deficit, hyperactivity disorder), hernia, back issues attributed to being shot in the back of the leg with the bullet emerging from Plaintiff's sternum, extreme weight loss, colostomy bag, knee issues with his left knee giving out, and hands cramping up.  AR[2] at 311.  Plaintiff's application initially was denied on October 9, 2019, AR at 99-107, 122-25, and upon reconsideration on January 10, 2020.  AR at 126-29.

On January 22, 2020, Plaintiff requested an administrative hearing.  AR at 130-32.  On November 23, 2020, Plaintiff amended his alleged disability onset date ("DOD") to June 25, 2019, *i.e.*, the date on which Plaintiff's disability benefits application was filed.  AR at 359.  On December 18, 2020, Plaintiff's request for an administrative

---

[2] References to "AR" are to the Bates-numbered pages of the Administrative Record electronically filed by Defendant on July 26, 2022 (Dkt.7).

hearing was granted, AR at 200-24, with the administrative hearing held July 9, 2021,

via teleconference, before Administrative Law Judge ("ALJ") Mary Sparks ("the ALJ"),

located in Albany, New York.  AR at 27-59 ("the administrative hearing").  Appearing

and testifying at the hearing were Plaintiff, represented by legal counsel Zachary

Zabawa, Esq., and impartial vocational expert ("VE") Trisha Muth.  On July 28, 2021,

the ALJ issued a decision denying Plaintiff's claim based on a finding that Plaintiff

remains capable of performing work at all exertional levels as defined under the relevant

regulations with several non-exertional limitations, including his past relevant work as a

hand packager and a telephone operator.  AR at 7-26 ("the ALJ's decision").  On July

30, 2021, Plaintiff timely appealed the ALJ's decision to the Appeals Council

("administrative appeal").  AR at 261-63.  On March 3, 2022, the Appeals Council

denied Plaintiff's request for review, AR at 1-6, thereby rendering the ALJ's decision the

Commissioner's final decision on Plaintiff's disability benefits application.

On May 1, 2022, Plaintiff commenced the instant action seeking review of the

ALJ's decision denying Plaintiff disability benefits.  On September 29, 2022, Plaintiff

moved for judgment on the pleadings (Dkt. 10) ("Plaintiff's Motion"), attaching the

Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings

(Dkt. 10-1) ("Plaintiff's Memorandum").  On November 28, 2022, Defendant moved for

judgment on the pleadings (Dkt. 11) ("Defendant's Motion"), attaching the

Commissioner's Memorandum in Support of Her Motion for Judgment on the Pleadings

and in Response to Plaintiff's Memorandum Pursuant to Local Rule 5.5 on Social

Security Cases (Dkt. 11-1) ("Defendant's Memorandum").  On December 18, 2022,

Plaintiff filed Plaintiff's Response to Commissioner's Brief in Support and in Further

Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. 12) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## FACTS[3]

Plaintiff Jose F. ("Plaintiff"), born March 6, 1977, was 39 years as of his alleged disability onset date ("DOD") of July 21, 2016, and 44 years old as of July 28, 2021, the date of the ALJ's decision.  AR[4] at 21, 33, 264, 270-71, 307.  Plaintiff attended school in regular classes, did not graduate but obtained a GED in 1993.  AR at 33, 312.  Plaintiff did not serve in the military, and has not completed any specialized training, trade, or vocational school.  AR at 312.  Plaintiff never married and lives alone in a house.  *Id*. at 264-65, 488.  Plaintiff has four children, one of whom he had full-time custody which was reduced to part-time custody before Plaintiff lost all custody of his daughter while his disability application was pending.  AR at 46-47, 280-81, 616, 874.  Plaintiff drives,[5] AR at 15, 16, 773, 942, 1157.  Plaintiff's past work experience includes working in a collections agency, a hand packer, and as a telephone operator.  AR at 33-38, 54-55, 313,

It is undisputed Plaintiff suffers from mental impairments[6] for which Plaintiff, since February 5, 2014, has received treatment at Horizon Health Care ("Horizon Health") in

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

[4] References to "AR" are to the Bates-numbered pages of the Administrative Record electronically filed by Defendant on July 26, 2022 (Dkt. 7).

[5] Whether Plaintiff has a driver's license is not clear from the record.  *See* AR at 942 ("[Plaintiff] has been in and out of prison since 2003 for charges of driving w/o license, . . . .").

[6] Although Plaintiff alleges several physical impairments, including an incisional hernia from gunshot wound Plaintiff received while incarcerated, a bad back, and bad knees, AR at 511, 630, 632, Plaintiff

Buffalo, New York, where Plaintiff has been treated by several therapists and licensed mental health counselors including, most recently, Shacarah Henry, LMHC ("Counselor Henry"), with whom Plaintiff commenced treatment on December 23, 2019.  AR at 314, 560-1287.  At Horizon Health, Plaintiff was diagnosed with alcohol use disorder, moderate, post-traumatic stress disorder ("PTSD"), and unspecified bipolar and related disorders.  AR at 560-61.

In connection with Plaintiff's disability benefits claim, on September 13, 2019, Plaintiff underwent a consultative adult psychiatric examination by psychologist Christine Ransom, Ph.D. ("Dr. Ransom").  AR at 488-91 ("Dr. Ransom's opinion").  According to Dr. Ransom, Plaintiff reported his mood swings were stabilized, Plaintiff continued to feel nervous when leaving the house, he did not like being around crowds or noisy groups of people, Plaintiff took anti-anxiety medication to help with encounters with other people which was helpful and allowed Plaintiff to complete his activities, and Plaintiff denied ongoing, clinical level depression, generalized anxiety, panic attacks, manic symptomatology, thought disorder, cognitive symptoms and deficits, suicidal and homicidal ideation, and phobic and trauma responses.  *Id*. at 488-89.  Plaintiff's mental status examination was remarkable only for "express[ing] mildly tense affect during the evaluation," and Dr. Ransom reported the results of Plaintiff's mental status examination were consistent with Plaintiff's educational and vocational history and life experience.  AR at 490.  According to Dr. Ransom, Plaintiff can dress, bathe and groom himself, cook and prepare food, clean, do laundry, and shop, manage money, drive, interacts mostly with his cousins, watches television and listens to the radio, keeps his

---

challenges to the ALJ's decision are limited to his mental impairments.  Accordingly, the court focuses on Plaintiff's mental impairments.

appointments, and enjoys cooking, although he feels anxious around crowds and takes anti-anxiety medication.  *Id*. at 490.  Dr. Ransom's medical source statement included that Plaintiff had mild difficulty with understanding, remembering, and applying complex directions and instructions, regulating emotions, controlling behavior and maintaining wellbeing, but showed no evidence of limitations with understanding, remembering and applying simple directions and instructions, using judgment and reasoning to make work related decisions, interacting adequately with supervisors, coworkers and the public, sustaining concentration to perform a task at a consistent pace, sustaining an ordinary routine and regular attendance at work, maintaining personal hygiene and attire, and being aware of normal hazards and taking precautions.  *Id*.  Dr. Ransom stated Plaintiff's areas of difficulty are mild and secondary to social phobia, and assessed the evaluation results as "consistent with a mild psychiatric condition that will not significantly interfere with the claimant's ability to function on a daily basis."  *Id*.  Dr. Ransom diagnosed Plaintiff with social phobia, currently mild, and unspecified mood disturbance, currently in remission.  *Id*. at 491.  Dr. Ransom concluded that Plaintiff's prognosis was fair to good with continued treatment, and mild residual symptomatology was likely to remain indefinitely, but was controlled with medication such that Plaintiff should remain in treatment indefinitely.  *Id*.

On October 2, 2019, non-examining State agency review psychologist D. Juriga, Ph.D. ("Dr. Juriga"), reviewed Plaintiff's medical records and diagnosed Plaintiff with depressive, bipolar and related disorders, and trauma and stressor-related disorders, assessing Plaintiff with mild limitations in his abilities to understand, remember or apply information, and adapt and manage oneself, but no limitations in his abilities to interact

with others and concentrate, persist or maintain pace, such that Plaintiff's mental impairments were considered non-severe.  AR at 104-05 ("Dr. Juriga's opinion").  On January 2, 2020, State agency review psychologist L. Dekeon, Ph.D. ("Dr. Dekeon"), reviewed Plaintiff's medical records and confirmed Dr. Juriga's opinion.  AR at 114-16.

On January 25, 2021, Counselor Henry provided an opinion on a Mental Residual Functional Capacity Questionnaire created and provided by Plaintiff's attorney for use in connection with Plaintiff's SSI claim.  AR at 603-609 ("Counselor Henry's opinion").  Counselor Henry indicated that since December 23, 2019, she has treated Plaintiff two to three times a week for PTSD, auditory hallucinations, and bipolar disorder.  AR at 605.  Plaintiff's treatment included individual and group therapy, increasing support through peer interactions and recovery coach services, and medication management.  *Id*.  According to Counselor Henry, Plaintiff "exhibits difficulty with concentration, severe episodes of depression and anxiety that impact his ability to function including difficulty leaving the house and increased feeling of being overwhelmed by tasks."  *Id*.  Plaintiff was expected to need ongoing treatment and his prognosis was fair.  *Id*.  Counselor Henry checked boxes indicating Plaintiff's signs and symptoms of his mental impairments included anhedonia, appetite disturbance with weight change, decreased energy, blunt, flat or inappropriate affect, feelings of guilt or worthlessness, generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, persistent disturbances of mood or affect, substance dependence, emotional withdrawal or isolation, bipolar syndrome, easy distractibility, memory impairment, sleep disturbance, and recurrent severe panic attacks.  *Id*. at 606.

Counselor Henry checked additional boxes indicating the impact of Plaintiff's mental impairments on 16 separately listed mental abilities and aptitudes needed for unskilled work, assessing two abilities as "unlimited or very good," eight abilities as "limited but satisfactory," and six abilities as "seriously limited," while no abilities were assessed as either "unable to meet competitive standards," or "no useful ability to function." AR at 607. According to Counselor Henry, Plaintiff's mental impairments were expected to cause Plaintiff to miss more than four days of work per month, and last at least 12 months, and that Plaintiff's mental impairments continued to exist despite Plaintiff not currently using alcohol. *Id*. at 609. Counselor Henry concluded that Plaintiff could not engage in full-time competitive employment on a sustained basis. *Id*.

<u>**DISCUSSION**</u>

**1.     Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were

based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id*.  "Congress has instructed . . . that the factual findings of the Secretary,[7] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

        In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original).  "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'"  *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

## 2.    Disability Determination

        Plaintiff seeks disability benefits pursuant to Title XVI (SSI) of the Act.  The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.[8]

---

[7] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

[8] Although the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title II, 42 U.S.C. § 423(d), and Title XVI, 42 U.S.C. § 1382c(a)(3), are identical, so that "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

*Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's residual functional capacity ("RFC") which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age,

education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

**3.     Analysis of Plaintiff's Arguments**

In the instant case, the ALJ found that although Plaintiff has engaged in some work since June 25, 2019, his amended alleged DOD, his earnings from such work did not amount to substantial gainful activity ("SGA") and that Plaintiff thus has not engaged in SGA since June 25, 2019.  AR at 12-13.  The ALJ found Plaintiff suffers from the severe impairments of unspecified bipolar disorder and related disorder, mild anxiety disorder, PTSD, obesity, asthma, and alcohol use disorder in early remission, *id*. at 13, but that the record did not show that Plaintiff's musculoskeletal impairments, including bilateral ankle pain, shoulder pain, and back pain, and non-surgical abdominal hernia, more than minimally interfered with Plaintiff's ability to perform work-related activity and thus are not severe impairments, *id*. at 13-14, and that none of Plaintiff's severe impairments, either individually or in combination, meets or medically equals the

severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id*. at 14-16.

Despite his impairments, the ALJ found Plaintiff retains the RFC to perform a full range of work at all exertional levels, but with several nonexertional limitations including avoiding concentrated exposure to fumes, odors, dust, gases, and poorly ventilated areas, is limited to performing simple, repetitive jobs defined as those having a specific vocational preparation level (pertaining to the time required to learn the techniques of a particular job) ("SVP") of 1 or 2, and low stress jobs defined as requiring no more than occasional decision-making and no more than occasional changes in the work setting, and no interaction with the public, only occasional interaction with coworkers, but Plaintiff cannot work in tandem with coworkers and, after the initial training period, Plaintiff could have no more than occasional interaction with supervisors.  AR at 16-20. The ALJ further found Plaintiff remains capable of performing his past relevant work ("PRW") as a hand packager, and telephone operator, as well as a warehouse worker, laundry worker, and kitchen helper, AR at 20-21, consistent with the VE's testimony at the administrative hearing.  AR at 54-57.  Accordingly, the ALJ found Plaintiff was not disabled as defined in the Act since June 25, 2019, his amended alleged DOD and the date Plaintiff filed his disability benefits application.  *Id*. at 21.

In support of his motion, Plaintiff argues the ALJ failed to properly evaluation Counselor Henry's opinion that Plaintiff is disabled, Plaintiff's Memorandum at 10-15, and failed to tether the RFC determination to substantial evidence in the record, improperly relying instead on the ALJ's own lay opinion in finding the Plaintiff more disabled than supported by the opinions of the consultative and State agency review

psychologists. *Id*. at 15-21.  In contrast, Defendant argues the ALJ's opinion is supported by substantial evidence in the record, Defendant's Memorandum at 9-14, with the ALJ properly explaining how she evaluated the persuasiveness of Counselor Henry's opinion, *id*. at 14-18, and the ALJ did not err in finding Plaintiff's RFC was more limited than the medical opinions rendered by the consultative psychologist and the State agency psychologists. *Id*. at 18-21.  In reply, Plaintiff advises he is relying on his arguments made in his memorandum of law regarding the ALJ's evaluation of Counselor Henry's opinion, Plaintiff's Reply at 1, and maintains the ALJ erred in failing to tether her RFC assessment to any opinion or other substantial evidence in the record pertaining to Plaintiff's mental impairment, erroneously relying, instead, on her own lay opinion. *Id*. at 2-8.  There is no merit to Plaintiff's arguments.

The court first addresses Plaintiff's argument that the ALJ improperly evaluated Counselor Henry's opinion that Plaintiff, based on his mental impairments, is disabled. When a medical source provides a medical opinion, the Commissioner will consider the opinion from that source according to five factors including (1) supportability; (2) consistency; (3) the medical's source's relationship with the claimant; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. § 416.920c(c).  Relevantly, when evaluating the persuasiveness of a medical opinion, the two most important factors are supportability and consistency, 20 C.F.R. § 419.920c(a), and the ALJ must articulate he or she considered the "supportability" and "consistency" of a medical source's opinion, 20 C.F.R. § 416.920c(b)(2), but is not required to articulate consideration of the remaining factors. *Id.*  Nevertheless, an ALJ's failure, as here, to articulate the

supportability and consistency factors with regard to a medical opinion is harmless error where the record establishes application of the correct legal standard would not have changed the outcome of the disability determination.  *See Scott A. v. Comm'r of Soc. Sec.*, 2022 WL 3141707, at * 5-6 (N.D.N.Y. May 3, 2022) (applying harmless error standard announced in *Schall v. Apfel*, 134 F.3d 496, 504-05 (2d Cir. 1998) where the ALJ failed to articulate the supportability and consistency factors in assessing the persuasiveness of a physician's opinion where application of the correct legal standard would not have resulted in a different conclusion (comparing *Johnathan W. v. Saul*, 2021 WL 1163632, at * 7 (N.D.N.Y. Mar. 26, 2021) (finding ALJ's failure to articulate how persuasive was a physician's opinion, including failing to explain the supportability and consistency factors, was not harmless error because that opinion could have impacted the ALJ's analysis in a meaningful way))).

In the instant case, the ALJ observed that Counselor Henry reported Plaintiff is "seriously limited" with regard to many functional mental abilities and aptitudes for unskilled, semi-skilled, skilled and particular jobs.  AR at 19.  The ALJ further observed Counselor Henry found Plaintiff would miss more than four days of work per month because of symptoms and treatment for his mental impairment and is incapable of working full time.  *Id*.  Because the ALJ determined Counselor Henry's opinion is not supported by her own therapy notes and Plaintiff's activities of daily living and work activities, the ALJ found it unpersuasive.  *Id*.  The ALJ's decision in this regard is not erroneous.

In particular, the Mental Residual Functional Capacity Questionnaire on which Counselor Henry provided her opinion is largely a "check box" form providing five

options from which Counselor Henry chose in assessing Plaintiff's mental abilities and aptitudes including (1) unlimited or very good; (2) limited but satisfactory; (3) seriously limited; (4) unable to meet competitive standards; and (5) no useful ability to function. AR at 607-08.  In completing the form, Counselor Henry, as regards the mental abilities and aptitudes for unskilled work, checked boxes indicating Plaintiff is "unlimited or very good" in asking simple questions or requesting assistance, and being aware of normal hazards and taking appropriate precautions.  AR at 607.  Plaintiff was indicated as being "limited, but satisfactory" in remembering work-like procedures, understanding and remembering very short and simple instructions, carrying out very short and simple instructions, sustaining an ordinary routine without special supervision, making simple work-related decisions, performing at a consistent pace without an unreasonable number and length of rest periods, accepting instructions and responding appropriately to criticisms from supervisors, and getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes.  *Id.*  Other checked boxes indicate Plaintiff is "seriously limited" in maintaining attention for a two hour segment, maintaining regular attendance and being punctual within customary, usually strict tolerance, working in coordination with or in proximity to others without being unduly distracted, completing a normal workday and workweek without interruptions from psychologically based symptoms, responding appropriately to changes in a routine work setting, and dealing with normal work stress.  *Id*.  For semiskilled and skilled work, Plaintiff's mental abilities were assessed as "limited but satisfactory" for understanding and remembering detailed instructions, carrying out detailed instructions, and setting realistic goals or making plans independently of others, while Plaintiff was "seriously

limited" in dealing with the stress of semiskilled and skilled work.  *Id*. at 608.  For mental abilities and aptitude needed for particular types of jobs, Counselor Henry checked boxes assessing Plaintiff was limited but satisfactory in interacting appropriately with the general public, maintaining socially appropriate behavior, adhering to basic standards of neatness and cleanliness, and using public transportation, and seriously limited in traveling in unfamiliar places.

Significantly, for all categories of work, Counselor Henry did not check any boxes assessing Plaintiff's mental abilities were unlimited or very good, unable to meet competitive standards, or no useful ability to function.  *Id*. at 607-08.  Nevertheless, Counselor Henry concluded that Plaintiff is unable to engage in full-time, competitive employment on a sustained basis.  AR at 609.  Not only is this determination internally inconsistent but, as the ALJ discussed, AR at 14-18, Counselor Henry's conclusion that Plaintiff is unable to work is not supported by Horizon Health's therapy notes and other evidence in the record.

The numerous Horizon Health therapy notes the ALJ referenced as inconsistent with Horizon Health Counselor Henry's opinion specifically include mental status examinations showing generally normal findings except for some depression, anxiety, or dysthymic mood.  *See*, *e.g.*, AR at 671-72 (Horizon Health on September 20, 2019); 678-79 (Horizon Health on November 26, 2019); 710-11 (Horizon Health on July 28, 2020), 725-26 (Horizon Health on January 8, 2021).  The ALJ observed that many of Plaintiff's Horizon Health therapy notes indicate Plaintiff reported mild symptoms.  *See*, *e.g.*, AR at 15-16 (referencing AR at 854 (May 14, 2020 Horizon Health therapy note stating Plaintiff "reports he is doing well . . . rates depression at 2 out of 10 as he has

not been feeling depressed . . . rates anxiety at 1 overall but did have an anxiety attack .

. . "); AR at 874 (July 21, 2020 Horizon Health therapy note stating Plaintiff "reports he is

doing well . . . states he does not feel depressed or anxiety . . ."); and AR at 884

(August 8, 2020 Horizon Health therapy note reporting Plaintiff "denies depression and

anxiety")).  The ALJ observed that although Horizon Health's therapy notes indicate

Plaintiff reported hallucinations on two occasions, the hallucinations were attributed to

Plaintiff's non-compliance with medication, or other stressors such as a pending court

date.  *See* AR at 15 (citing AR at 446 (January 11, 2019 – hallucinations attributed to

noncompliance with medication and smoking cannabis), AR at 680 (October 16, 2018 –

Plaintiff "is nervous about court tomorrow to determine if he will go to jail or get

probation.")).  The ALJ also considered other references in Horizon Health's therapy

notes in the record to Plaintiff working after filing his disability benefits claim.  *See*, *e.g.*,

AR at 13 (citing AR at 949 (Horizon Health on April 30, 2020 ("[Plaintiff] reports he has

been working for his friend a couple of days a week and cutting hair at home for

family")); AR at 14 (citing Horizon Health therapy notes (AR at 610-1287) indicating that

Plaintiff's "symptoms improve when he is/was working, . . .")[9]; and AR at 15 (citing AR at

864 (Horizon Health therapy note dated June 16, 2020, stating that Plaintiff "was

working 3 times a week doing odd jobs, and because he had custody of his daughter

than [*sic*], he had a babysitter for her when he was working.")).

The ALJ further considered Plaintiff's own description of his activities of daily

living including that Plaintiff could dress, bathe, and groom himself, cook and prepare

---

[9] *See* AR at 777 (June 20, 2019 Horizon Health therapy note describing Plaintiff as "report[ing] he has been busy with working for friend with construction and at banquets states he feels good about working . . . .").

food, clean, do laundry, shop, manage money, and drive, and that Plaintiff interacts

socially mostly with his cousins and keeps all his appointments, AR at 15, to be

inconsistent with Plaintiff's complaints regarding his mental impairment.  *See Green v.*

*Comm'r of Soc. Sec.*, 2018 WL 2269797, at * 3 (W.D.N.Y. May 17, 2018) (the ALJ's

consideration of the plaintiff's activities of daily living showed they were inconsistent with

a finding of disability).

    These inconsistencies between Counselor Henry's therapy notes and other

evidence in the record, and her conclusion that Plaintiff is unable to work support the

ALJ's finding that Counselor Henry's opinion is "unpersuasive."  AR at 19.  *See Tricarico*

*v. Colvin*, 681 Fed.Appx. 98, 100-01 (2d Cir. 2017) (a treating physician's opinion need

not be given controlling weight either where it is internally inconsistent or inconsistent

with other evidence in the record).  Moreover, the repeated reports that Plaintiff

continues to work are substantial evidence supporting the ALJ's determination that

Counselor Henry's opinion was not persuasive.  *See Silva v. Saul*, 2019 WL 2569595,

at *5 (W.D.N.Y. June 21, 2019) (collecting cases) (explaining that an "ALJ may also

properly consider a claimant's demonstrated ability to work part-time during the relevant

period as evidence that the claimant is not completely disabled").  *See also Rivers v.*

*Astrue*, 280 Fed.Appx. 20, (2d Cir. 2008) (claimant's continued employment in jobs

categorized as "light work" after applying for disability benefits was substantial evidence

that the claimant retained the RFC for light work).  There thus is no merit to Plaintiff's

argument that the ALJ's determination that Counselor Henry's opinion was

unpersuasive or that the ALJ's failure to discuss the supportability and consistency

factors with regard to Counselor Henry's opinion and the evidence in the record is error requiring remand.

Nor did the ALJ err by failing to "tether" the RFC determination to a medical opinion of record as Plaintiff argues.  Plaintiff's Memorandum at 15-21; Plaintiff's Reply at 2-8.  It is the ALJ, and not a medical source, who is responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 404.1527(d)(2), 416.946(c), and 416.927(d)(2).  Further, despite decisions rendered in this district, several of which are referenced by Plaintiff, Plaintiff's Memorandum at 17, 19-20, granting the Plaintiff's request for remand based on the ALJ's failure to "tether" the RFC determination to a particular medical opinion, the undersigned finds such requirement is irreconcilable with the Second Circuit's repeated instruction that "the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence."  *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971), and *Matta v. Astrue*, 508 Fed.Appx. 53, 56 (2d Cir. 2013)).  Rather, "the ALJ is 'entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'"  *Id.* (quoting *Matta*, 508 Fed.Appx. at 56 (brackets in *Schillo*).  *See Monroe v. Comm'r of Soc. Sec.*, 676 Fed.Appx. 5, 9 (2d Cir. 2017)) (the ALJ could rely on voluminous treatment notes that provided medical assessments of Plaintiff's characteristics relevant to her ability to work, as well as her activities of daily living, to formulate the RFC without the benefit of a medical opinion where the record contained sufficient evidence from which an ALJ could assess the claimant's RFC.  The ALJ is permitted to formulate the RFC without regard to any particular medical opinion provided the record as a whole contains

sufficient evidence from which the claimant's RFC can be determined.  *See Cook v. Comm'r of Soc. Sec.,* 818 Fed.Appx. 108, 109-10 (2d Cir. 2020) ("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity.'") (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed.Appx. 29, 34 (2d Cir. 2013)).

Here, the ALJ considered and found somewhat unpersuasive the opinions of consulting psychologist Dr. Ransom, who found Plaintiff has a mild psychiatric condition that was not likely to interfere with Plaintiff's ability to work, and State agency medical consultant Dr. Juriga, who found Plaintiff did not have a severe mental impairment, which finding was confirmed in connection with Plaintiff's administrative appeal by Dr. Dekeon.  Significantly, consultative examiners and State agency medical consultants are deemed to be highly qualified physicians who are experts in Social Security disability evaluations and an ALJ is entitled to rely upon their opinions, which can also serve as substantial evidence. *See Petrie v. Astrue*, 412 Fed.Appx. 401, 405-06 (2d Cir. 2011) (citing 20 C.F.R. §§ 404.1513a and 416.913a, *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004), and *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)). Further, as discussed above, Discussion, *supra*, at 15-19, there is a plethora of evidence in the record establishing the ALJ's RFC determination, although not "tethered" to any medical opinion, is supported by substantial evidence including the Horizon Health therapy notes showing Plaintiff's mental impairments were generally described as mild, and that Plaintiff was engaging in some work, and Plaintiff's activities of daily living.

Nor is there any merit to Plaintiff's assertion, Plaintiff's Memorandum at 19-21; Plaintiff's Reply at 2, that the ALJ erred in formulating an RFC that is more restrictive than supported by the opinions of Drs. Ranson, Juriga, and Dekeon.  Not only does such argument ignore that Plaintiff bears the burden of establishing his RFC is more restrictive than the ALJ's determination, *see Smith v. Berryhill*, 740 Fed.Appx. 721, 726 (2d Cir. 2018) (denying remand where the plaintiff failed to meet his burden to prove a more restrictive RFC than assessed by the ALJ) (citing 42 U.S.C § 423(d)(5)); *Michael P. V. Commissioner of Soc. Sec.*, 2023 WL 21228, at * 7 (W.D.N.Y. Jan. 3, 2023) (declining to remand and granting the commissioner's motion for judgment on the pleadings where the plaintiff presented no evidence of functional limitations greater than those found by the ALJ), but here, that the ALJ's determination that Plaintiff's RFC including additional restrictions that limited Plaintiff to working fewer jobs than supported by a medical opinion, such determination, if incorrect, is merely harmless error.  *See Ellen A. v. Saul*, 2021 WL 1087949, at * 4 (W.D.N.Y. Mar. 22, 2021) (ALJ's determination that Plaintiff's RFC was more restrictive than what was supported by the medical evidence in the record was favorable to the plaintiff and thus was harmless error).  In sum, even if the ALJ's formulated an RFC that was more restrictive than the record supports, such error was harmless  and does not support remand as a less restrictive RFC determination would still lead to a conclusion that Plaintiff is not disabled.  *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("[W]here application of the correct legal principles to the record could lead [only to the same] conclusion, there is no need to require agency reconsideration." (quoting *Johnson v. Bowen*, 817 F.2d 983, 986-87 (2d Cir. 1987))).

The threshold for substantial evidence "is not high . . . .  It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal citation and quotation marks omitted).  The issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet*, 523 Fed.Appx. at 59 (quoting *Brault*, 683 F.3d at 448) (italics in original).  So long as the evidence in the administrative record, including diagnostic evidence and treatment notes support the ALJ's RFC determination, it cannot be said that "no reasonable factfinder could have reached the same conclusion," so as to uphold an RFC assessment upon judicial review. *Schillo*, 31 F.4th at 78 (citing *Brault*, 683 F.3d at 448). *See also Cook,* 818 Fed.Appx. at 109-10 ("Here, the treatment notes were in line with the ALJ's RFC determinations.").  Here, the requisite deferential review of the ALJ's decision establishes it is supported by substantial evidence in the record, requiring Plaintiff's Motion be DENIED and Defendant's Motion be GRANTED.

## **CONCLUSION**

Based on the following, Plaintiff's Motion (Dkt. 10) is DENIED; Defendant's Motion (Dkt. 11) is GRANTED.  The Clerk of Court is DIRECTED to CLOSE the file. SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      September 17, 2024
                  Buffalo, New York

22